Shipley *vs.* Eiswald.

---

R. J. SHIPLEY, plaintiff in error, *vs.* T. G. EISWALD, defendant in error.

1. In granting a new trial the court is confined to the grounds alleged in the motion. A new trial cannot be granted for newly discovered evidence which is neither set forth nor referred to in any ground of the motion, though it be stated fully in the affidavits produced by the movant on the hearing. Such affidavits are simply irrelevant.

2. The verdict being fully supported by the evidence, a new trial was properly refused.

New trial. Newly discovered evidence. Before Judge HALL. Rockdale Superior Court. October Term, 1874.

Eiswald brought trover against Shipley for two sorrel horses and a two-horse wagon and double harness, alleged to be of the value of $360 00, and worth $3 00 per day for hire. The defendant pleaded the general issue.

The evidence for the plaintiff was, in substance, as follows:

1st. Contract signed by W. B. Roberts, of date January 14th, 1873, by which he agreed to purchase from plaintiff two sorrel, one gray, and one bay, colored horses, two wagons and two sets of harness, for $720 00, to be paid for in a certain

manner, and subject to certain conditions, all unnecessary here.

Upon this contract was the following indorsement :

"The within named two sorrel horses, one set of double harness and one wagon, this day surrendered to said Eiswald, and new contract made touching the same.

    (Signed)             ·      "T. G. EISWALD,
    [No date.]              "W. B. ROBERTS."

2d. Contract between the same parties, of date, May 10th, 1873, signed by both parties, by which plaintiff hired to Roberts two sorrel horses, one double set of harness and one two-horse wagon, the latter to have the privilege to purchase said property until September 15th, next thereafter, by depositing with plaintiff $100 00, monthly, commencing with June 1st next, for three months, and $60 00 on said September 15th. This instrument further provided that if Roberts did not so manifest his intention to buy before each of the aforesaid respective dates, he forfeited his right to purchase and all former deposits, and was to pay $1 00 per day for hire, the title in the property remaining in the plaintiff until paid for. Then follows provisions as to Roberts' holding as bailee, taking care of and feeding stock, etc.

3d. The plaintiff testified, in brief, as follows: Property sued for was in possession of defendant. Demanded the same before suit. Worth $3 00 per day for hire. Went to see W. B. Roberts in fall of 1873. Got McCurdy's mule and buggy. Did not then see him. The next time he went, he walked out to see him. His business was to get a brown mare and buggy which he had hired to Roberts with the privilege of buying, or the pay for them. Made arrangements for him to furnish the plaintiff wood in pay for same. Did not tell McCurdy that he had received all the pay for the sorrel horses but $80 00 or $90 00. Told him that there was a balance due on a horse trade. D. R. Roberts is a brother of W. B. Roberts. Had a conversation with him in the summer of 1873. Told him that his brother owed witness $80 00 or $90 00. Was speaking of balance due on bay and gray horses.

Shipley *vs.* Eiswald.

The first contract was settled on ...... day of May, as appears from the entry thereon. Then the second contract was entered into in reference to the property in controversy. Roberts has never paid $1 00 for them.

### EVIDENCE FOR THE DEFENDANT.

1st. John W. McCurdy testified, in brief, as follows: Plaintiff came to Stone Mountain in the fall of 1873 for the purpose of going out to the place of W. B. Roberts. Witness furnished him a horse, buggy and a negro boy, to take him out. He asked witness if Roberts had any wood on the road as he wanted to get some. Replied that he, witness, had wood which he would sell him. Said he wished to buy from Roberts as the latter was owing him a balance on a horse trade. The hire of horses and wagon, after payment of expenses, was not worth more than $1 00 per day.

2d. D. R. Roberts testified, in brief, as follows: W. B. Roberts, his half brother, bought, or made some kind of a trade to get one gray horse, one bay horse, and one or two wagons, from plaintiff. Thinks the sorrel horses were paid for all except $80 00 or $90 00. This opinion is based on the fact that he was hauling brick and wood for the plaintiff to pay for the horses, and heard his brother and plaintiff, in settling, say that there was that amount still due on the horses. He hauled, after that conversation, for the plaintiff. He understood that it was to finish paying for the sorrel horses.

3d. R. J. Shipley testified, in substance, that he purchased the horses, wagons and harness from W. B. Roberts, on the Wednesday after the first Tuesday in October, 1873, for $270 00. That he paid for the same in good faith, and never knew of any adverse claim until the day this suit was commenced, when they were demanded from him; that he paid their full value; that $1 00 per day would be full value of hire of property after deducting expenses of same.

The jury found for the plaintiff $620 00. The defendant moved for a new trial because the verdict was contrary to the evidence, and because of the newly discovered evidence of

W. P. Weaver and J. N. Wilson. Other grounds are set forth in the record, but were not insisted on.

In support of the newly discovered evidence were attached the affidavits of George W. Gleaton and of A. C. McCalla, attorneys for defendant, the first to the effect that he did not discover the evidence of W. T. Gunby, W. P. Weaver, J. N. Wilson, E. A. Carter and W. B. Roberts, until the trial of the case; that about the last of October, 1874, he received information that W. B. Roberts was somewhere in Arkansas, through J. S. Shipley, brother of the defendant; that since that time, and before, he used due diligence to obtain information as to his whereabouts; that he only ascertained what he would swear in March, 1875.

The second, substantially to the same effect, except that deponent did not come into possession of the evidence until after the trial; that Clark & Pace, counsellors at law, only came into the case at the trial thereof; also, the usual affidavit of the defendant.

The affidavits of all of the witnesses named by counsel as to what they would testify were attached. It is deemed unnecessary to set them out here in view of the decision rendered by this court. A counter-showing to the motion was made by the plaintiff, for the same reason immaterial here. A new trial was refused, and the defendant excepted, assigning error as follows :

1st. Because the verdict was contrary to the evidence.

2d. Because of the newly discovered evidence, as shown by the affidavits of W. P. Weaver, J. N. Wilson, W. T. Gunby, E. A. Carter, W. B. Roberts.

3d. Because the counter-showing was allowed.

4th. Because the court refused to allow time for the defendant to procure evidence in rebuttal of the plaintiff's counter-showing.

GEORGE W. GLEATON ; A. C. McCALLA ; CLARK & PACE, for plaintiff in error.

S. B. SPENCER ; A. C. PERRY, for defendant.

BLECKLEY, Judge.

The motion for new trial contains various grounds, but none of them were insisted upon before this court except those relating to newly discovered evidence and to the insufficiency of the evidence to support the verdict. It is complained that Judge Hall, in acting upon the newly discovered evidence, pursued a practice not warranted by law, hearing counter-affidavits from the opposite party, and receiving certain documentary evidence to contradict and discredit one of the witnesses whose affidavit was produced by the movant. It is complained, also, that the judge refused to postpone the hearing to afford time for due preparation to meet and reply to this counter-showing.

1. The decision of these questions is rendered unnecessary by the condition in which we find the record, together with the abandonment by counsel, in the argument, of all the alleged newly discovered evidence except that of Roberts, the witness above referred to. The motion for new trial, as it comes to us, does not include the discovery of Roberts' evidence within the grounds of the motion. The newly discovered evidence on which the motion is based, is alone that of Weaver and Wilson, as will be seen by reference to the reporter's statement. The abandonment, therefore, of all the newly discovered evidence except that of Roberts, puts the whole subject of newly discoverd evidence out of the case, and we so treat it. It would, of course, be idle to decide anything in respect to the evidence of Roberts, since it is not alleged as the whole or any part of any ground for the new trial claimed : 44 *Georgia,* 620; 50 *Ibid.,* 150. Doubtless if acted upon by Judge Hall, it was from oversight, or else the record before us is, by some accident, not a true transcript from the original. We, however, must be governed by it.

2. The verdict is not in conflict with the evidence, nor is there a want of evidence to justify it, either on the subject of title in the plaintiff or on the amount of the recovery, the two points on which it was assailed in argument. There was

positive testimony that the property belonged to the plaintiff, and no very strong evidence to the contrary. The jury, in the light of the explanations which were before them, probably reconciled it all and made it consistent; but if they did not and could not, they were the proper arbiters of any conflict that existed. In respect to the damages found, the hire allowed must have amounted to little, if any, more than the lowest estimate put upon it by any of the witnesses; to carry it to the highest, the verdict might have been increased several hundred dollars.

There was no error in refusing a new trial, and the judgment is affirmed.